UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RICHARD SCHIFFMANN,
    Plaintiff,

v.                                        C.A. No. 12-695 ML

UNITED STATES OF AMERICA,
    Defendant.

UNITES STATES OF AMERICA,
    Counterclaim Plaintiff,

v.

RICHARD Schiffmann, GEORGE STROUTHOPOULOS,
ERWIN W. VAHLSING, JR., and STEPHEN
CUMMINGS,
    Counterclaim Defendants.

## MEMORANDUM AND ORDER

Plaintiff, Richard Schiffmann ("Schiffmann"), has filed a complaint against the United States for the recovery of federal payroll taxes assessed and collected. The United States has answered the complaint and filed counterclaims, to collect outstanding taxes, against Schiffmann, George Strouthopoulos ("Strouthopoulos"), Erwin Vahlsing ("Vahlsing"), and Stephen Cummings ("Cummings"). The matter is before the Court on the Government's motion for summary judgment on the counterclaims against Schiffmann, Strouthopoulos, and Cummings.[1]

### I. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An

---

[1] Default judgment has entered against Vahlsing in the sum of $923,009.86.

1

issue is "genuine" if the pertinent evidence is such that a rational factfinder could resolve the issue in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).

The moving party bears the initial burden of showing the Court that no genuine issue of material fact exists. Id. Once the moving party makes this showing, the non-moving party must point to specific facts demonstrating a trialworthy issue. Id. The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Continental Casualty Co. v. Canadian Universal Insurance Co., 924 F.2d 370 (1st Cir. 1995).

To aid the Court in identifying genuine issues of material fact, this District has adopted Local Rule Cv 56. "Valid local rules are an important vehicle by which courts operate. Such rules carry the force of law . . . and they are binding upon the litigants and upon the court itself . . . ." Air Line Pilots Association v. Precision Valley Aviation, Inc., 26 F.3d 220, 224 (1st Cir. 1994) (citations and footnote omitted). Local Rule Cv 56 provides that, in addition to a memorandum of law, the moving party in a motion for summary judgment "shall" also file a separate statement of undisputed facts. D.R.I. LR Cv 56(a)(1). An "objecting party that is contesting the movant's Statement of Undisputed Facts shall file a Statement of Disputed Facts, which shall be numbered correspondingly to the Statement of Undisputed Facts, and which shall identify the evidence establishing the dispute . . . ." Id. at (a)(3). "[A]ny fact alleged in the movant's Statement of Undisputed Facts shall be deemed admitted unless expressly denied or otherwise controverted by a party objecting to the motion." Id. Parties who ignore Local Rule Cv 56 do so at their own peril. See generally Gosselin v. Webb, 242 F.3d 412, 415 n.2 (1st Cir. 2001); see also Pope v. Potter, No. 03-544, 2005 WL 3178179 (D.R.I. November 28, 2005) (under

2

similar prior version of local rule, the court held that an attempt to dispute facts by merely incorporating them into a memorandum opposing a motion for summary judgment does not meet the requirements of the local rule; a separate statement must be filed).

In addition to its motion and memorandum, the Government filed a statement of undisputed facts. See D.R.I. LR Cv 56(a)(1). Schiffmann and Cummings filed a joint memorandum in opposition to the motion for summary judgment but did not file a statement of disputed facts. Strouthopoulos did not respond to the motion for summary judgment. Thus, the facts as delineated in the Government's statement of undisputed facts are deemed admitted. See D.R.I. LR Cv 56(a)(3); Indian Harbor Insurance Co. v. Assurance Co. of America, No. CA 08-146 ML, 2010 WL 2365571 (D.R.I. May 21, 2010), report and recommendation adopted, No. CA 08-146 ML, 2010 WL 2346654 (D.R.I. June 9, 2010).

## II. Background

### A. ICOA, Inc.

ICOA, Inc. ("ICOA") is a holding company whose subsidiary companies provide wireless internet services in public places such as airports, coffee shops, and marinas. WebCenter Technology, Inc. ("WebCenter"), a subsidiary of ICOA, is the payroll processor for ICOA. After notice and demand, WebCenter failed to pay federal payroll tax liabilities. Accordingly, the Internal Revenue Service ("IRS") made tax assessments against the parties that it deemed "responsible persons" under 26 U.S.C. § 6672 – Strouthopoulos, Schiffmann, Cummings, and Vahlsing. Strouthopoulos was assessed for the fourth quarter of 2004 through the fourth quarter of 2007; Schiffmann was assessed for the second quarter of 2005 through the second quarter of 2006; Cummings was assessed for the fourth quarter of 2005 through the second quarter of 2006. As of March 3, 2014, the Government contends

that the outstanding balances on the assessments, including interest, are as follows: Strouthopoulos $908,995.31, Schiffmann $401,362.31 and Cummings $285,741.71.

### B. The Counterclaim Defendants

#### 1. Schiffmann

In 2003, Schiffmann sold a business he co-founded to ICOA. As part of the compensation for the sale of the business, Schiffmann received stock in ICOA. Subsequent to the sale of his business, Schiffmann began working for ICOA and became its president in October 2004. At that time, Strouthopoulos was ICOA's chief executive officer ("CEO") and Vahlsing was ICOA's chief financial officer ("CFO"). On April 1, 2005, Schiffmann became CEO of ICOA. At or about the same time, Schiffmann also became a member of ICOA's board of directors.

As CEO, Schiffmann supervised employees, had the authority to fire employees, and was involved in the acquisition of numerous subsidiaries. While CEO, Schiffmann also authorized payments to creditors, including payroll. During his tenure as CEO, Schiffmann was a signatory on ICOA's bank account and exercised check signing authority when Vahlsing was unavailable to sign checks. Schiffmann's check signing authority included authorizing payments to vendors and signing checks payable to employees that were "most likely" payroll checks. Statement of Undisputed Facts at ¶ 11; Docket # 34.

As CEO, Schiffmann was aware that ICOA experienced cash flow problems, bounced checks, and had trouble paying creditors. Employees complained to Schiffmann about not being paid on time.[2] Schiffmann discussed ICOA's financial problems with Vahlsing and Strouthopoulos but was not satisfied with their responses. In August 2005, Schiffmann grew frustrated with his inability to resolve

---

[2]Employees were scheduled to be paid on a weekly basis.

4

the financial problems of ICOA and hired Cummings as a financial consultant.

Schiffmann never asked Vahlsing if ICOA was current on its tax liabilities. Schiffmann first became aware of ICOA's federal tax liability in late October or early November 2005 when Cummings brought the issue to his attention.[3]

## 2. Cummings

Schiffmann interviewed Cummings for a financial consultant position for ICOA because Cummings was an "established finance guy with an audit background" and because he was impressed by the fact that Cummings had worked for the IRS. Statement of Undisputed Facts at ¶ 20; Docket # 34. On October 25, 2005, Cummings became the CFO of ICOA. As CFO, Cummings was responsible for the "financial well-being" of ICOA, interviewed candidates for jobs, hired a financial consultant, and helped determine financial policy. Id. at ¶ 22. After becoming CFO, Cummings was granted signatory authority on ICOA's bank account. Cummings used his signatory authority to sign checks, including the "occasional" payroll check. Id. at ¶ 23.

As CFO, Cummings had access to all of ICOA's financial records including its tax records. Shortly after becoming CFO, Cummings examined ICOA's tax records and learned that ICOA had not paid its payroll taxes for several years. According to ICOA's records, as of September 30, 2005, the accrued payroll tax liability was $386,115.18.[4] As CFO, Cummings would "periodically review what was being paid" and choose what bills to pay in order to keep the business operating. Id. at ¶ 24. Although he knew that ICOA continued to be delinquent on its payroll tax liabilities, Cummings chose

---

[3] Because the Court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party, the Court finds that Schiffmann became aware of the outstanding tax liability in early November 2005.

[4] This total is made up of taxes accrued from 2001 through September 30, 2005. The total includes an accrued state tax liability of over $46,000.

5

to sign checks payable to creditors, other than the United States, that he deemed crucial.

### C. November 2005 Board Meeting

Schiffmann and Cummings decided to convene a meeting of the ICOA board of directors to discuss, among other things, ICOA's tax liabilities. The meeting was held on November 18, 2005. At the time of the meeting, the ICOA board of directors consisted of Schiffmann, Strouthopoulos, Vahlsing and Stephen Harris. Cummings attended the meeting and

> introduced a number of tax issues to the Board, including an update on the Corporation's payroll and income tax status. [He] reminded the Board that the Corporation is approximately four years behind in payroll and income taxes. [He] noted that while the tax exposure is recorded on the balance sheet and expected penalties are recorded[,] the Corporation must resolve its obligations . . . .

Id. at ¶ 44. During the meeting, the board of directors adopted a number of resolutions, including (1) appointing Cummings and Schiffmann directors of each of ICOA's subsidiaries; (2) electing Cummings senior vice president, CFO, secretary and treasurer of ICOA, (3) electing Vahlsing vice president of finance of ICOA; and (4) granting ICOA's officers the authority to incur financial and contractual obligations according to the following schedule: CEO (Schiffmann) – $100,000; CFO (Cummings) – $75,000; and vice president (Vahlsing) – $25,000. Despite Schiffmannn's authority, he did not consider writing a check to make a payment on the tax liability.

After the November meeting, Schiffmann and Cummings discussed ways to raise funds to pay the tax liabilities and they spoke to an attorney concerning ICOA's tax situation. No payment of tax liabilities, however, resulted from these efforts. At his deposition, Schiffmann testified that although ICOA raised capital after the November board meeting, the capital "that came into the company . . . [was not] targeted to address . . . the tax obligation." Exhibit 2, Schiffmann Deposition at 88; Docket # 33-5.

6

ICOA's board of directors fired Schiffmann and Cummings effective June 23, 2006. After Schiffmann and Cummings were fired, Strouthopoulos became CEO and Vahlsing became CFO.

### D. Infusions of Cash

From March 2004 to February 2006, ICOA received approximately $2,000,000 in funding from Cornell Capital, including $544,893 received during Cummings' tenure as CFO and $944,880 received during Schiffmann's tenure as CEO.

### F. Payment to Creditors Other than the United States

ICOA continued to pay creditors other than the United States, including its employees, rather than satisfy its increasing tax liabilities. ICOA paid its employees as follows:

| Quarterly Tax Period Ending | Total Taxable Wages Paid During Quarter |
| --- | --- |
| June 30, 2005 | $ 430,308.45 |
| September 30, 2005 | 386,937.87 |
| December 31, 2005 | 480,181.85 |
| March 31, 2006 | 395,001.75 |
| June 30, 2006 | 417,967.97 |

### E. Balance Due on Assessments

As of March 3, 2014, the Government contends that the outstanding balances due on the assessments, including interest, are as follows:

| Defendant | Quarterly Tax Period Ending | Balance Due[5] |
| --- | --- | --- |
| Schiffmann | June 30, 2005 | $ 54,131.38 |
|  | September 30, 2005 | 61,489.22 |
|  | December 31, 2005 | 106,309.08 |

---

[5]Several of the balances due on the assessments for a particular quarter listed on the Government's statement of undisputed facts did not match the balances due for the same quarters listed on the affidavit of revenue officer Raymond Galas ("Galas"). The Court brought this discrepancy to the attention of the Government during a conference with the parties. The Government subsequently filed a supplemental statement of undisputed facts and a supplemental affidavit from Galas.

|              |                    |              |
|--------------|--------------------|--------------|
|              | March 31, 2006     | 88,548.19    |
|              | June 30, 2006      | 90,884.44    |
|              |                    | $ 401,362.31 |
| Cummings     | December 31, 2005  | 106,309.08   |
|              | March 31, 2006     | 88,548.19    |
|              | June 30, 2006      | 90,884.44    |
|              |                    | $ 285,741.71 |
| Strouthopoulos | December 31, 2004 | 31.91       |
|              | March 31, 2005     | 62,045.15    |
|              | June 30, 2005      | 57,844.08    |
|              | September 30, 2005 | 64,667.80    |
|              | December 31, 2005  | 110,310.48   |
|              | March 31, 2006     | 91,885.00    |
|              | June 30, 2006      | 94,326.68    |
|              | September 30, 2006 | 113,503.29   |
|              | December 31, 2006  | 82,827.99    |
|              | March 31, 2007     | 60,416.17    |
|              | June 30, 2007      | 53,111.69    |
|              | September 30, 2007 | 69,276.67    |
|              | December 31, 2007  | 48,748.40    |
|              |                    | $ 908,995.31[6] |

### III. Law

Employers are required to withhold federal social security taxes and income taxes from employee wages and to forward the withholdings to the United States. Moulton v. United States, 429 F.3d 352 (1st Cir. 2005). Amounts withheld are held in trust for the United States. Id.; see also Sotir v. United States, 978 F.2d 29, 30 (1st Cir. 1992) ("[e]mployers are required to hold these withheld funds in trust for the United States . . . and thus the taxes are sometimes referred to as trust-fund taxes") (internal quotation marks and citations omitted). An employer must report the amounts quarterly. Moulton, 429 F.3d 355. Once funds are withheld from an employee's wages, the IRS does

---

[6] Assessments were made against Strouthopoulos in June 2009 and against Schiffmann and Cummings in May 2010. Thus, because interest runs from the date of assessment, the balance due on the same underlying liability (e.g., June 30, 2005 - June 30, 2006) is greater for Strouthopoulos.

8

not have recourse against the employee for the withheld taxes – even if the employer does not forward the funds to the IRS. United States v. Hulick, No. 08-cv-499-SM, 2011 WL 6100910 (D.N.H. Dec. 7, 2011). The Internal Revenue Code, however, "imposes personal liability not only upon employers but upon their officers and agents who are responsible for collecting, accounting for, and paying over to the government the taxes withheld." Thomsen v. United States, 887 F.2d 12, 14 (1st Cir. 1989).

26 U.S.C. § 6672 imposes upon "responsible persons" what is known as the Trust Fund Recovery Penalty. Hulick, 2011 WL 6100910 at *5. 26 U.S.C. § 6672 provides, in part, that any

> person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a). An individual is liable under § 6672(a) if he or she (1) is a person who is "required to collect, truthfully account for, [or] pay over the taxes (' a responsible person'), and (2) willfully fails to do so." Jean v. United States, 396 F.3d 449, 454 (1st Cir. 2005) (internal quotation marks and citation omitted).

### A. Responsible Person

To determine if an individual is a responsible person under 26 U.S.C. § 6672 courts look to the totality of the circumstances. Vinick v. United States, 205 F.3d 1 (1st Cir. 2000) (Vinick II); Keohan v. United States, 138 F. Supp. 2d 62 (D. Mass. 2001).

> In determining who falls within the category of responsible person, the courts have identified seven typically used, but nonexclusive, indicia. The inquiry focuses on whether the individual (1) is an officer or member of the board of directors, (2) owns shares or possesses an entrepreneurial stake in the company, (3) is active in the management of day-to-day affairs of the company, (4) has the ability to hire and fire employees, (5) makes decisions regarding which, when and in what order outstanding debts or taxes will be paid, (6) exercises control over daily bank accounts and

9

disbursement records, and (7) has check-signing authority.

Vinick II, 205 F.3d at 7 (internal quotation marks and citation omitted). Although emphasis is placed on the last three factors, no single factor controls the analysis. Id. at 8, 9; Keohan, 138 F. Supp. 2d at 73. More than one person may be held responsible for the tax liability. Lubetzky v. United States, 393 F.3d 76 (1st Cir. 2004). Liability under § 6672 is joint and several among responsible persons. Gray v. United States, No. 11-0680 SC, 2012 WL 525512 (N.D. Cal. Feb. 16, 2012).

In determining whether an individual is a responsible party, an "essential factor . . . is any decision-making authority over which creditor . . . [the business] paid." Keohan, 138 F. Supp. 2d at 74 (internal quotation marks and citation omitted). "The weight of the seven factors . . . and other relevant circumstance . . needs to lean towards such decision-making authority in order to hold a person responsible. . . ." Id. (internal quotation marks and citation omitted). Courts concentrate on "whether the person had the effective power to pay the taxes – that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed. . . ." Moulton, 429 F.3d 356 (internal quotation marks and citation omitted). Check signing authority is a significant factor; the authority to sign checks, however, without more, is a "weak pillar on which to rest a liability determination. . . ." Vinick II, 205 F.3d at 10. "Possession of the authority without its exercise is not enough." Id. Courts analyze check signing authority in the context of financial control. Id. The ability to issue "smaller checks without the approval of a superior may demonstrate one's authority to pay the employer's withholding taxes to the IRS." Keohan, 138 F. Supp. 2d at 74.

"Responsibility is a matter of status, duty and authority, not knowledge." Thomsen, 887 F.2d at 16 (internal quotation marks, footnote, and citation omitted). Courts have "explicitly given the word 'responsible' a broad interpretation." Moulton, 429 F.3d at 356 (internal quotation marks and citation

omitted). Courts have

> fashioned an elastic definition [of a responsible person] predicated upon the function of an individual in the employer's business, not the level of the office held: whether the person had the power to determine whether the taxes should be remitted or paid or had the final word as to what bills should or should not be paid and when. [T]he word final means significant rather than exclusive control over the disbursement of funds.

Keohan, 138 F. Supp. 2d at 74 (internal quotation marks and citation omitted). An individual cannot avoid responsibility by claiming that he or she failed to pay the taxes at the direction of a supervisor. Keohan, 138 F. Supp. 2d at 75.

Responsibility is determined on a quarter-to-quarter basis. Vinick v. Commissioner of Internal Revenue, 110 F.3d 168, 170-172 (1st Cir. 1997) ("Vinick I"); Vinick II, 205 F.3d at 10-11; Moulton, 429 F.3d at 357. Responsibility during one quarter does not make the individual automatically a responsible person for all periods. Vinick II, 205 F.3d at 10-11. Evidence outside a quarter, however, may be used to establish liability for the quarter. Moulton, 429 F.3d at 357.

> For example, behavior in one quarter, depending on the circumstances, could cast light on one's status as a responsible person in other quarters. Because one's function and status can change between quarters, however, it would be erroneous based solely on evidence from one quarter automatically to conclude that a person is responsible in another quarter.

Id. (internal quotation marks and citation omitted).

### B. Willfulness

To act willfully under § 6672 an individual "must have some knowledge of failure or risk of failure to remit the employment taxes." Jean, 396 F.3d at 454 (internal quotation marks and citation omitted). Willfulness does not depend on the presence of criminal motive or specific intent to defraud. Vinick I, 110 F.3d at 173. It is "enough if a defendant knows that the taxes are due from the company and yet disburses funds for other purposes or knowingly fails to pay the required sum to the

11

government." Lubetzky, 393 F.3d at 80. Willfulness under § 6672 is a "voluntary, conscious and intentional decision to prefer other creditors to the United States . . . ." Harrington v. United States, 504 F.2d 1306, 1311 (1st Cir. 1974). "Any responsible person who knows the taxes are not paid and allows the business to pay other creditors acts willfully." Caterino v. United States, 794 F.2d 1, 6 (1st Cir. 1986).

### C. Presumption

A presumption of correctness attaches to a tax assessment made by the IRS. Iantosca Benistar Admin Services, Inc., 826 F. Supp. 2d 344 (D. Mass. 2011). "The presumption arises when the IRS submits a certification of the Commissioner's assessment . . . or an affidavit signed by an IRS officer detailing the tax liability." Greco v. United States, 380 F. Supp. 2d 598, 611 (M.D. Pa. 2005) (citations omitted). In order to overcome this presumption, a defendant must demonstrate, by a preponderance of the evidence, that the assessment is erroneous. Iantosca, 826 F. Supp. 2d 344. Thus, the individual challenging the § 6672 assessment has the burden of proving, by a preponderance of the evidence, that he is not a responsible person or that he did not act willfully. Jean, 396 F.3d at 454; Keohan, 138 F. Supp. 2d at 73. At the summary judgment stage, however, the Government, as the moving party, has the initial burden of demonstrating the absence of a genuine issue of material fact and that it deserves judgment as a matter of law. Vinick I, 110 F.3d 171. A defendant must demonstrate that disputed facts preclude summary judgment. Id.

## IV. Analysis

### A. Strouthopoulos

Strouthopoulos did not respond to the Government's motion for summary judgment. Whether or not opposed, summary judgment can only be granted if "the movant shows that there is no genuine

12

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see generally Carmona v. Toledo, 215 F.3d 124, 134 n.9 (1st Cir. 2000). In support of its motion, the Government submitted an affidavit from Galas, an Internal Revenue Officer. The affidavit states that Defendants were assessed for unpaid tax liabilities and lists the assessment and outstanding liability, for each quarter assessed, as of March 3, 2014.[7]

As noted, the burden of proof is on the taxpayer to disprove his responsible person status or his willfulness under § 6672. Jean, 396 F.3d at 454; see generally United States v. Star-Tel, Inc., No. Civ. A. H-03-3904, 2005 WL 2810701 at *3 (S.D. Tex. Oct. 26, 2005) ("[o]nce the Government offers an assessment into evidence, the burden of proof is on the taxpayer to disprove his responsible-person status or willfulness"). "If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial, then the moving party is entitled to judgment as a matter of law." Niarchos v. City of Beverly, 831 F. Supp. 2d 423, 426 (D. Mass. 2011) (internal quotation marks and citation omitted); see also Star-Tel, Inc., 2005 WL 2810701 at *3 (summary judgment granted where the government submitted evidence of assessments and defendant did not file a response to the motion for summary judgment or "otherwise attempt to raise a genuine issue of material fact as to his responsible person status, the validity of the assessments, or the amount of the § 6672 penalties due and owing"); United States v. Van Horn, Civil Action No. 3:09-cv-2088, 2010 WL 4853887 (M.D. Pa. Nov. 22, 2010) (where government introduced certified transcript of assessment and defendant failed to present evidence to rebut liability, summary judgment was proper).

---

[7] In its reply memorandum to Schiffmann's and Cummings' objection to the supplemental statement of undisputed facts, the Government provided the Court with the certified transcripts of the assessments against Defendants.

13

The Government has presented evidence of valid tax assessments and Strouthopoulos' outstanding tax liabilities. Strouthopoulos has not filed a response to the motion for summary judgment or otherwise attempted to raise a genuine issue of material fact as to his responsible person status, willfulness, the validity of the assessments, or the outstanding tax liability. Thus, there is no remaining genuine issue of material fact. See generally Star-Tel, Inc., 2005 WL 2810701. The Government is entitled to summary judgment with respect to its claim against Strouthopoulos.

B. Are Schiffmann and Cummings Responsible Persons Pursuant to 26 U.S.C. § 6672?

1. Schiffmann

Schiffmann was assessed tax liabilities for the quarterly periods beginning April 1, 2005, through June 30, 2006. Schiffmann was CEO from April 1, 2005 to June 23, 2006. As CEO, Schiffmann:

- was an officer of ICOA;
- was involved in the acquisition of numerous ICOA subsidiaries;
- at some point in the summer of 2005 was aware that ICOA was experiencing financial problems and hired Cummings as a consultant;
- supervised employees and had the ability to fire employees;
- authorized payments to creditors, including authorizing payroll payments;
- was a signatory on ICOA's bank account and exercised his check signing authority;
- was a member of the board of directors and held stock in ICOA; and
- as of November 18, 2005, was a director of each of ICOA subsidiaries and had the authority to obligate ICOA funds up to $100,000.

The Court gives the term "responsible" a broad interpretation. Moulton, 429 F.3d at 356.

14

During the quarters assessed, as to Schiffmann's role with ICOA, at least 5 of the 7 Vinick II factors are present. See Vinick II, 205 F.3d at 7 (indicia of a finding of responsibility includes, the holding of corporate office or membership on the board of directors, active in the day to day affairs, control over bank accounts, stock ownership, and check signing authority); see also United States v. Terra Realty Trust, Civil Action No. 05-40017-FDS, 2008 WL 4787592 (D. Mass. Oct. 16, 2008) (court found defendant a responsible person where at least four of the seven Vinick II factors were present). The undisputed facts show that Schiffmann "possessed sufficient control over corporate affairs to avoid the default" during the quarters assessed. Moulton, 429 F.3d at 356 (internal quotation marks and citation omitted). Taking all these factors together, the Court concludes that Schiffmann was a responsible person from April 1, 2005 until June 23, 2006.

## 2. Cummings

Cummings was assessed tax liabilities for the quarterly periods beginning October 1, 2005, through June 30, 2006. Cummings was CFO of ICOA from October 25, 2005 to June 23, 2006. During his tenure as CFO:

- was an officer of ICOA;
- interviewed candidates for jobs at ICOA and hired a financial consultant;
- was responsible for the financial well-being of ICOA;
- helped determine the financial policy for ICOA;
- was a signatory on ICOA's bank account and exercised his check signing authority;
- chose what bills to pay to keep ICOA operating; and
- as of November 18, 2005, was a director of each of ICOA subsidiaries, was appointed ICOA's secretary and treasurer and had the authority to obligate ICOA funds up to $75,000.

15

During the quarters assessed, as to Cumming's role with ICOA, at least 4 of the 7 Vinick factors are present. See generally Vinick II, 205 F.3d at 7 (indicia of a finding of responsibility includes, the holding of corporate office, control over bank accounts, check signing authority; and makes decisions regarding which, when, and in what order outstanding debts are paid); see also Jenkins v. United States, 484 F. App'x 511 (Fed. Cir. 2012) (in finding defendant was a responsible person, court considered fact that defendant determined the financial policy of the company). Furthermore, Cummings had access to all of ICOA's financial records and chose what bills to pay in order to keep ICOA operating. See generally Keohan, 138 F. Supp. 2d at 74 ("essential factor" in determining whether an individual is a responsible party "is any decision-making authority over which creditor [the business] paid") (internal quotation marks and citation omitted). Taking all these factors together, the Court concludes that Cummings was a responsible person from October 25, 2005 to June 23, 2006.

### C. Did Schiffmann and Cummings Act Willfully?

#### 1. Schiffmann

##### a. Before Early November 2005

Schiffmann contends that there are genuine issues of material fact concerning whether he willfully failed to pay the taxes in the second and third quarters of 2005. Schiffmann argues that he could not have acted willfully during this period because he only became aware of ICOA's unpaid taxes in the fourth quarter – in early November 2005.

The Court has determined that Schiffmann was a responsible party from April 1, 2005 through June 23, 2006. "[I]t is settled law that a responsible person who becomes aware that taxes have gone unpaid in past quarters <u>in which he was also a responsible person</u>. . . is under a duty to use all 'unencumbered funds' available to the corporation to pay those back taxes." United States v. Kim, 111

16

F.3d 1351, 1358 (7th Cir. 1997) (emphasis added).

> This duty extends not only to funds available to the corporation at the time the responsible person becomes aware, but also to any unencumbered funds acquired thereafter. If the responsible person fails to use such unencumbered funds to satisfy the past unpaid liability, he is deemed personally liable for the taxes that went unpaid in the past while he was responsible. The responsible person deemed liable for the unpaid liability of past tax quarters is considered to have 'willfully' failed to pay over the taxes for those past quarters, even though he was unaware at that time that the taxes were going unpaid. The one limitation on this is that the person is only liable to the extent that 'unencumbered funds' are available or acquired after the time in which the person becomes aware.

Id. at 1357-58 (citation omitted). Funds are "encumbered only when the taxpayer is legally obligated to use the funds for a purpose other than satisfying the preexisting employment tax liability and if that legal obligation is superior to the interest of the IRS in the funds." Honey v. United States, 963 F.2d 1083, 1090 (8th Cir. 1992); see generally Lack v. United States, Civ. A. No. 91-11520, 1993 WL 565986 (D. Mass. Oct. 4, 1993) (a security interest in funds does not preclude a finding that funds are unencumbered for purposes of § 6672).

Schiffmann first learned of the tax delinquency during the fourth quarter of 2005 – in early November. ICOA received $301,500 from Cornell Capital on November 2, 2005, $145,893 on December 16, 2005, and $97,500 on February 2, 2006. The record does not reflect that those funds were encumbered. Furthermore, during the fourth quarter of 2005 and the first quarter of 2006, ICOA paid its employees in excess of $875,000. The record reflects that ICOA had more than sufficient unencumbered funds available to pay the taxes assessed for the period from the second quarter of 2005 through early November 2005. Because Schiffmann failed to use available unencumbered funds to satisfy the tax liability, he is "considered to have 'willfully' failed to pay over the taxes. . . ." Kim, 111 F.3d at 1358.

### b. After Early November 2005

With respect to the remaining quarters that Schiffmann was assessed, Schiffmann also acted willfully. As noted, Schiffmann was aware of the outstanding tax liability at some point in early November 2005. ICOA, however, continued to pay its employees and ignored the accrued tax liability and the tax liability on the wages ICOA continued to pay its employees. "Any responsible person who knows the taxes are not paid and allows the business to pay other creditors acts willfully." Caterino, 794 F.2d at 6; see also Harrington, 504 F.2d at 1311 (willfulness is a voluntary decision to prefer other creditors to the United States).

### 2. Cummings

### a. After Early November 2005

In late October 2005, Cummings became CFO. In early November 2005, he learned that ICOA had not paid its payroll taxes for several years. As CFO, Cummings chose what bills to pay in order to keep ICOA operating. Although Cummings knew ICOA continued to be delinquent on its payroll tax liabilities, he chose to authorize payment to creditors other than the United States. "Any responsible person who knows the taxes are not paid and allows the business to pay other creditors acts willfully." Caterino, 794 F.2d at 6; see also Harrington, 504 F.2d at 1311 (willfulness is a voluntary decision to prefer other creditors to the United States).[8]

---

[8] To the extent that Cummings argues that he is not liable for the assessment for the period between when he became CFO (October 25, 2005) and when he first learned of the tax delinquency (early November 2005) that argument is rejected for the same reasons the Court rejected the similar argument made by Schiffmann – after Cummings became aware of the tax liability there were adequate unencumbered funds available to pay the taxes for this period.

### D. Liability

#### 1. The Second Quarter of 2006

A responsible person's liability for taxes attaches at the time of withholding. Jones v. United States, 60 F.3d 584 (9th Cir. 1995). Although Schiffmann and Cummings were terminated effective June 23, 2006, they were responsible persons prior to their terminations. ICOA paid its employees on a weekly basis. Because ICOA terminated Schiffmann and Cummings before the last pay period in the quarter, Schiffmann and Cummings are liable for 12 of the 13 weekly pay periods during the fourth quarter of 2006. Thus, Schiffmann and Cummings' liability for the second quarter of 2006 is $83,856.41.

#### 2. The Fourth Quarter of 2005

During the fourth quarter of 2005, Cummings was a responsible party from October 25 to December 31, 2005. Because he became a responsible party only as of October 25, Cummings is responsible for 10 of the 13 weekly pay periods during the fourth quarter of 2005. Thus, Cummings' liability for the fourth quarter of 2005 is $81,776.22.

#### 3. Summary of Defendants' Outstanding Liability

| Defendant | Quarterly Tax Period Ending | Balance Due |
|---|---|---|
| Schiffmann | June 30, 2005 | $ 54,131.38 |
| | September 30, 2005 | 61,489.22 |
| | December 31, 2005 | 106,309.08 |
| | March 31, 2006 | 88,548.19 |
| | June 30, 2006 | <u>83,856.41</u> |
| | | $ 394,334.28 |
| Cummings | December 31, 2005 | 81,776.22 |
| | March 31, 2006 | 88,548.19 |
| | June 30, 2006 | <u>83,856.41</u> |
| | | $ 254,180.82 |

| | | |
|---|---|---|
| Strouthopoulos | December 31, 2004 | 31.91 |
| | March 31, 2005 | 62,045.15 |
| | June 30, 2005 | 57,844.08 |
| | September 30, 2005 | 64,667.80 |
| | December 31, 2005 | 110,310.48 |
| | March 31, 2006 | 91,885.00 |
| | June 30, 2006 | 94,326.68 |
| | September 30, 2006 | 113,503.29 |
| | December 31, 2006 | 82,827.99 |
| | March 31, 2007 | 60,416.17 |
| | June 30, 2007 | 53,111.69 |
| | September 30, 2007 | 69,276.67 |
| | December 31, 2007 | <u>48,748.40</u> |
| | | $ 908,995.31[9] |

## V. Conclusion

The Government's motion for summary judgment is granted.

SO ORDERED

/s/ Mary M. Lisi
Mary M. Lisi
United States District Judge
April 9, 2014

---

[9] Liability for the fourth quarter of 2005, the first quarter of 2006, and the second quarter of 2006 is joint and several between Schiffmann, Cummings and Strouthopoulos. Liability for the second and third quarter of 2005 is joint and several between Schiffmann and Strouthopoulos.